UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEYTONA D. ALEXANDER,

        Plaintiff,

v.

ROBERT VIVIANO, in his individual
and official capacities, and DOUGLAS
MCLEOD, in his individual
and official capacities,

        Defendants.

_____/

Case No. 17-cv-12461

Paul D. Borman
United States District Judge

Elizabeth A. Stafford
Magistrate Judge

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #17)

## I.    INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment seeking dismissal of Plaintiff's claims against two City of Burton Police Officers, Defendants Robert Viviano and Douglas McLeod, for various violations of the Fourth Amendment in connection with a traffic stop and detention that occurred on June 22, 2017.

On July 28, 2017, Plaintiff Keytona D. Alexander filed his Complaint (ECF #1), and on August 28, 2017, Officers McLeod and Viviano filed their Answer and Affirmative Defenses. (ECF #5.) The Complaint asserted the following claims

1

against both Officer Viviano and Officer McLeod, in their individual and official capacities:

Count I - 42 USC §1983, Fourth Amendment Violation – Unlawful Stop

Count II - 42 USC §1983, Fourth Amendment Violation – Unlawful Arrest

Count III - 42 USC §1983, Fourth Amendment Violation – Unlawful Search

Count IV - 42 USC §1983, Fifth Amendment Violation – Unlawful Custodial Interrogation

Count V - 42 USC §1983, Fourteenth Amendment Violation – Substantive and Procedural Due Process

Count VI - 42 USC §1983, Fourteenth Amendment Violation – Equal Protection of Laws

On May 25, 2018, Officers Viviano and McLeod filed the instant Motion for Summary Judgment. (ECF #17.) In his Response filed on June 22, 2018, Plaintiff culled his claims and the specific Defendants thereto. (Pl. Resp., P. 14, fn. 2, PgID 433, ECF #22.) Thus, the remaining claims are: (1) Count I against Officer Viviano for "unlawful stop;" (2) Count II against Officer Viviano for "unlawful arrest;" and (3) Count III against Officer McLeod for "unlawful search." (*Id.*) Plaintiff also voluntarily dismissed all official capacity claims. (*Id.*) Defendants filed their Reply on July 5, 2018. (ECF #23.) The Court held a hearing on Defendants' Motion for Summary Judgment on November 29, 2018.

## II.    FACTS

On June 22, 2017, Plaintiff drove past Officer Robert Viviano on Bristol Road,[1] who was standing outside of his patrol car and heard a car accelerating. (Viviano Dep., 13:4, 16:20-25, PgID 221, 224, ECF # 17-3.) As Plaintiff drove past, he saw Officer Viviano standing outside of his patrol vehicle. (Alexander Dep., 37:1-10, PgID 156, ECF #17-2.) Officer Viviano looked up when he heard the car and noted that Plaintiff appeared to be driving above the posted speed limit, so he decided to follow Plaintiff to investigate further.  (Viviano Dep., 16:20-17:1, PgID 224-25, ECF #17-3.)

The Parties dispute where, when, and to what extent Plaintiff was speeding. Plaintiff testified that he was not driving "fast at all….[m]aybe 25[]" when he first encountered Officer Viviano's patrol car, and that he was travelling "[m]aybe a little above 25" later, when he reached the street where he resided (Fern Street). (Alexander Dep., 37:1-2, 38:19:20, PgID 156-57, ECF #17-2.) Officer Viviano believed that Plaintiff may have been driving 45 miles per hour, at least on Bristol Road, which has a 35 miles per hour speed limit, and above the limit later as well. (Viviano Dep., 17:6-14, PgID 225, ECF #17-3.)

Officer Viviano followed Plaintiff, attempting to catch up to in order to ascertain the make/model of the car and the license plate number. (Viviano Dep.,

---

[1] Bristol Road is referred to as "Burns Street" in error in Plaintiff's deposition.

21:21-23, PgID 229, ECF #17-3.) Once Officer Viviano and Plaintiff had both turned on to Fern Street, Officer Viviano informed the radio dispatcher that he was in pursuit of a fleeing vehicle. (Viviano Dep., 22:25-23:3, PgID 230-31, ECF #17-3.)

After several minutes, Officer Viviano caught up to Plaintiff on Fern Street and turned on his lights and siren to signal Plaintiff to pull over. (*Id.* at 23:4-6.) Plaintiff did not pull over immediately – he instead proceeded through an intersection, began pulling over, but then turned on his hazard lights and continued driving. (Video, 16:06:13.) Plaintiff motioned with his hand through the driver side window, appearing to point left. (Video, 16:06:19.) He then continued driving a short distance and made a left-hand turn into his driveway. (Viviano Dep., 34:3-8, 34:25-35:4, PgID 242-43, ECF #17-3.)

Officer Viviano ordered Plaintiff to exit the car and face away from him. (Viviano Dep., 40:18-25, PgID 248, ECF #17-3.) He instructed Plaintiff to walk backwards, drop to his knees, and place his hands on his head. (*Id.*) Plaintiff complied, whereupon Officer Viviano handcuffed Plaintiff and seated him in the back of his patrol car. (Viviano Dep., 41:1-3, PgID 249, ECF #17-3.) Officer Viviano performed a plain view search of Plaintiff's vehicle from the exterior. (Video, 16:08:40.)

Shortly thereafter, Officer McLeod arrived as backup. (Video, 16:08:27.) He spoke with Officer Viviano, who told him that Plaintiff had provided consent to a search of the vehicle. (McLeod Dep., 18:10-21, 21:13-17, 39:14-25, PgID 311, 314, 332, ECF #17-6.) Plaintiff denies ever giving consent to a search. (Alexander Dep., 55:17-56:8, PgID 173-74, ECF #17-2.) McLeod speaks briefly to the minor passenger before performing the "consent" search of Plaintiff's vehicle. (Video, 16:10:55.) Thirty seconds into Officer McLeod's search, Officer Viviano asks Plaintiff if they will find anything in the car, and Plaintiff responds, "[unintelligible] I will pop that trunk. Do whatever you need to do." (Video, 16:11:25.)

While Officer McLeod is performing the search, Plaintiff admitted that he was trying to avoid Officer Viviano because he was driving with an expired license. (Video, 16:09:30-16:09:50.) Approximately 18 minutes after Plaintiff pulls into his driveway, Officers Viviano and McLeod decide to issue citations for careless driving, driving with an expired license, and expired insurance, and Plaintiff was released. (Video, 16:15:00-16:24:12.)

## III.   STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). A fact is "material" for purposes of a summary judgment motion where proof of that fact "would have [the] effect of

establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 247 (6th Cir. 1991) (internal quotation marks omitted) (quoting *Celotex*, 477 U.S. at 323). If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322. "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

"The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal citations and quotation marks omitted). The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586–587 (1986) (footnote and internal quotations omitted).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). "'The central issue is whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). At the same time, plaintiff must produce enough evidence to allow a reasonable jury to find in his favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute is not enough." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

Ultimately, the party who bears the burden of proof must present a jury question as to each element of the claim. *See Davis*, 226 F.3d at 511. Plaintiff cannot meet that burden by relying solely on "[c]onclusory assertions, supported only by [his or her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 560 (6th Cir. 2008). Plaintiff must show probative evidence, based "on more than mere speculation, conjecture, or fantasy," to prevail. *Id.* at 601 (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.2004)).

All evidence submitted in opposition to a motion for summary judgment must ultimately be capable of being presented in a form that would be admissible at trial:

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise,

affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. *See* Fed. R. Evid. 801(c), 802. However, the party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such "'evidence submitted in opposition to a motion for summary judgment must be admissible.'" *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)). That is why "'[h]earsay evidence . . . must be disregarded.'" *Ibid*. It is also the basis of this court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e).

*CareSource*, 576 F.3d at 558-59 (internal citations omitted).

A court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

## IV.   ANALYSIS

### A. Count I – Unlawful Stop

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Chief Justice Warren's opinion in *Terry* noted:

> And in determining whether the officer acted reasonably…, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27.

The takeaway from *Terry* is that the Court must determine whether there was reasonable suspicion for the stop of Plaintiff.

Speeding is a civil traffic violation under Michigan law. MCL §257.627. Officer Viviano testified that when he was outside of his patrol car on Bristol Road: "I saw a white vehicle that based on my – my training and experience was traveling above the posted speed limit," which was 35 miles per hour. (Viviano Dep., 16:16-17:8, PgID 224-45, ECF #17-3.) When asked to estimate how fast Plaintiff was driving, Officer Viviano stated that it was "possible" that he was travelling in the 45 miles per hour range. *Id.*

Plaintiff argues that Officer Viviano did not measure Plaintiff's speed with any tool or other method, but an officer is permitted to estimate speed based on training and experience. *See United States v. Parker*, 530 F. App'x 449, 452 (6th Cir. 2013). Moreover, Plaintiff mischaracterizes Officer Viviano's testimony when arguing that "Viviano testified that he was catching up to the white vehicle[2] while driving only 35 to 40" miles per hour. (Chart, Pl. Resp. p. 7, PgID 426, ECF #22.) Officer Viviano's testimony as to when he caught up with Plaintiff (Viviano Dep., 23:3-6, PgID 231,  ECF #17-3) and when he himself was travelling 35 to 40 miles

---

[2] Plaintiff drove a white impala. (Alexander Dep., 32:3-6, PgID 151, ECF #17-2.)

per hour (*id.*, 21:24-22:23, PgID 229-30, ECF #17-3) refers to two separate instances in time, and that testimony therefore has no bearing on what speed Plaintiff was travelling and when. Further, Plaintiff's theories regarding another white vehicle are unsupported by testimony or other evidence. (*See* Chart, Pl. Resp. p. 7, PgID 426, ECF #22.)

After concluding that Plaintiff was exceeding the speed limit, Officer Viviano turned on his flashers and siren to order Plaintiff to pull over and stop. But Plaintiff did not pull over and stop; he kept driving. Thus, Officer Viviano also had reasonable suspicion to stop Plaintiff for fleeing and eluding, a felony under Michigan law. MCL §257.602a defines fleeing and eluding:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer.

When making reasonable suspicion determinations, courts must look at the "totality of the circumstances" to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an

untrained person." *Id.* (internal quotations omitted). *See also United States v. Lyons*, 687 F.3d 754, 765 (6th Cir. 2012). While evaluating an officer's decision to stop a vehicle, a court may not engage in a "sort of divide-and-conquer analysis" by evaluating and rejecting each factor in isolation. *Arvizu* at 274. This is because factors that by themselves may be "consistent with innocent travel" may collectively amount to reasonable suspicion. *Arvizu* at 274-75; *United States v. Calvetti*, 836 F.3d 654, 667 (6th Cir. 2016) (several factors taken together established reasonable suspicion).

In the case at bar, Officer Viviano had reasonable suspicion of fleeing and eluding to justify stopping Plaintiff. Officer Viviano heard the sound of a car accelerating, looked up, and saw a white vehicle "traveling above the posted speed limit." (Viviano Dep., 16:20-17:1, PgID 224-25, ECF #17-3.) He decided to follow the vehicle, which turned as Officer Viviano fell behind (Viviano Dep., 18:6-12, PgID 226, ECF #17-3) and then made another turn (Viviano Dep., 18:16-22, PgID 226, ECF #17-3). The Parties disagree as to whether Plaintiff ran a stop sign as he made the first turn, but it is undisputed that Plaintiff again turned. (Viviano Dep., 19:11-15, PgID 227, ECF #17-3; Video 16:05:47; Alexander Dep., 37:24-38:5.) After turning onto Fern Street, Officer Viviano alerted dispatch that a vehicle was attempting to flee from him. (Viviano Dep., 22:25-23:3, PgID 230-31 ECF #17-3.) When he caught up to Plaintiff, he then turned on his lights and siren to alert Plaintiff

to pull over. (Viviano Dep., 23:4-5, PgID 231, ECF #17-3.) Plaintiff did not pull over immediately but instead continued through another intersection. (Video, 16:06:12.) Plaintiff then turned on his hazards and veered to the right as if to pull over. (Video, 16:06:14.) But, yet again, Plaintiff did not pull over and instead pointed left out the driver's side window and continued driving. (Video, 16:06:17.) He then turned left into a driveway and finally stopped. The fact that Plaintiff finally slowed down before stopping does not evince that he was not attempting to elude the police. *People v. Grayer,* 235 Mich. App. 737, 741 (1999) (fleeing and eluding statute reveals no requirement that speed exceed a certain level).

Officer Viviano testified that he remained at that point unsure what type of situation he was dealing with, as the driver's behavior (speeding, including through residential and school zones, running stop signs, pulling in to a driveway) (Viviano Dep., 30:11-13, 33:10, 37:13-16, PgID 238, 241, 245, ECF #17-3) indicated that he was fleeing and eluding. Further, Officer Viviano was a one-man car, backup had not yet arrived, and he believed that Plaintiff would possibly attempt to run inside the house based on his past experience. (Viviano Dep., 37:12-23, PgID 245, ECF #17-3.) He stated, "I conducted a felony stop because I thought it was appropriate at that time based on the circumstances in front of me." (Viviano Dep., 39:19-21, PgID 247, ECF #17-3.)

Based on the totality of the circumstances, Officer Viviano had reasonable suspicion to conduct a felony stop. The fact that Defendants did not ultimately decide to charge Plaintiff with fleeing and eluding does not create a Fourth Amendment violation. *Arvizu*, 534 U.S. at 277 ("A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct.").

Plaintiff directs the Court to *Penrice v. Szokola*, No. 14-cv-14342, 2016 WL 427021 (E.D. Mich. Feb. 4, 2016) as factually similar, where the Court found that the officer lacked reasonable suspicion to execute an investigatory stop for fleeing and eluding. In that case, the plaintiff was driving in the left lane of the highway when the officer pulled up behind the car and signaled him to pull over. *Id.* at *1. It was undisputed that the plaintiff was not speeding, although the police report states that the plaintiff was pulled over for "weaving in and out of traffic," which the plaintiff denied. Plaintiff maneuvered to the right shoulder as soon as he saw the police signal. *Id.* at *3.

Once the plaintiff was on the shoulder, there was a large retaining wall and limited space, so he made eye contact with the officer and motioned that he was going to move to a safer spot, which he did. *Id.* at *1. According to the plaintiff, the officer also indicated that it was alright for him to pull forward. *Id.* at *4. After the plaintiff stopped, the officer approached the car and requested the plaintiff's license and some additional information. *Id.* at *1. The officer had requested backup after

signaling the plaintiff to stop, and two officers then arrived. *Id.* It was only then that the officer ordered the plaintiff to walk to the back of his patrol car and began searching the plaintiff, frisking him for weapons, announced he was under arrest, and "smashed" the plaintiff's head down on the police car. *Id.* at *1-2. The plaintiff was then transported to the police department. *Id.*

The case at hand is readily distinguishable. Here, Plaintiff was speeding, ran a stop sign, and importantly, after being signaled to pull over, Plaintiff did not stop, traveled through an additional intersection, veered to the right appearing to stop but then continued driving, then veered to the left, and did not make eye contact with Officer Viviano. Plaintiff pointed out of his window to the left, but that gesture was meaningless to Officer Viviano. Officer Viviano, a one-man patrol, gave no indication that Plaintiff should continue driving.

Also contrary to *Penrice,* there were no other vehicles in the area, and it would not have been unsafe for Plaintiff to stop immediately. Plaintiff proceeded to pull left in to a driveway, and in Officer Viviano's experience, individuals may flee into the building at that point, elevating the danger of the situation.[3] Indeed, here Plaintiff was heading to his house, where there could have been weapons, etc. Moreover,

---

[3] Officer McLeod testified that, "We all know the law. If the vehicle doesn't pull over to the right, …it becomes a non-typical traffic stop." (McLeod Dep., 26:21-23, PgID 319, ECF #17-6.)

Officer Viviano kept the scope of the stop within the appropriate bounds of the circumstances, as opposed to *Penrice,* where, for example, the plaintiff faced physical aggression – the officer hitting his head on the hood of the car – without having been resistant at any point.

Therefore, the Court grants Defendants' Motion with respect to Count I.

## B. Count II – Unlawful Arrest

Plaintiff concedes in his Response that if the Court finds that Officer Viviano had reasonable suspicion to believe that Plaintiff was fleeing and eluding him, then he "does not does not challenge the measures Viviano employed to effectuate the *Terry* stop since fleeing and eluding is a felony." (Pl. Resp. p. 14, fn. 2, PgID 433, ECF #22.) The Court interprets Plaintiff's footnote, in a subsection of his "Unlawful Stop" argument entitled "Unreasonable Detention," as acknowledging that if the stop was lawful, then the subsequent measures to detain Plaintiff were also lawful. *Id.* Indeed, Plaintiff was never arrested – he was reasonably detained while the officers investigated a potential felony charge of fleeing and eluding (a *Terry* stop). "An officer may seize an individual without offending the Fourth Amendment if the officer has reasonable suspicion that criminal activity may be afoot." *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012) (internal quotations omitted).

The Court accordingly grants Defendants' Motion as to Count II.

## C.    Count III – Unlawful Search

In his Response to Defendants' Motion, Plaintiff dismissed Officer Viviano from Count III, which alleges an unlawful search in violation of the Fourth Amendment. The Court will therefore consider only the conduct of Officer McLeod. Each defendant's liability must be assessed individually based on his own actions. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

Defendants argue that Officer McLeod's search of Plaintiff's vehicle was lawful because he relied on Officer Viviano's statement that he had obtained verbal consent to the search from Plaintiff. Officer Viviano testified that Plaintiff provided verbal consent (which Plaintiff disputes). (Viviano Dep. 56:18-57:1, PgID 264-65, ECF #17-3; McLeod Dep., 18:10-21, 21:13-17, 39:14-25, PgID 311, 314, 332 ECF #17-6.)  Officer McLeod testified that Officer Viviano informed him that Plaintiff had given him such verbal consent to search his vehicle before Officer McLeod arrived on the scene:

> Q:    (Attorney) What did you ask Officer Viviano when you got – once you got on the scene?
>
> A:    That's –
>
> Q:    As verbatim – as verbatim as you possibly can.
>
> A:    Sure. Sure. So he explained to me that Mr. Alexander was being cooperative. He was in the back seat of the vehicle. Roughly, there was a female passenger, he believed a juvenile passenger, in the vehicle, at which time he stated that Mr.

17

Alexander was giving consent to search the vehicle. And I spoke to the juvenile first and I conducted a search of the vehicle.

\*\*\*\*

Q:      Just to be clear, you indicated earlier that Officer Viviano informed you that Mr. Alexander had given his consent to a search of the car; is that correct?

A.      That's correct.

\*\*\*\*

Q:      So to be clear, the – you believed there was consent solely from speaking with Officer Viviano; is that correct?

A:      Right. So, to be clear, I mean, Officer Viviano is my partner. This is an arrestable offense…However, Mr. Alexander is cooperating, which allows us to do a more thorough investigation and to work with Mr. Alexander in the field. So it is – I received and was advised that it was a consent search from Officer Viviano.

(McLeod Dep., 18:10-21, 21:13-17, 39:14-25, PgID 311, 314, 332, ECF #17-6.)

There is, however, an issue of fact as to whether Plaintiff gave consent to search his vehicle prior to the search, because Plaintiff stated that he never gave consent to search his vehicle to either officer. In a slightly murky line of testimony, Plaintiff seemed to confuse Officer Viviano (who performed a plain sight search, according to the video evidence) and Officer McLeod (who performed a "consent" search):

Q:      (Attorney) Did [Officer Viviano] ask you if he could look in the car?

18

A:     No.

Q:     Ever?

A:     No – he did once, and I said, "Sure. You might as well. You already [sic] in there now." That was after he has already searched the front, the back, went through all my paperwork and payments and threw all my insurance papers all over the front seat of the car.

Q:     So, who asked if they could search your vehicle?

A:     He asked, the officer with glasses, asked me did he – he said, "If I search your vehicle, will I find anything?" And I said, "No."

Q:     And the officer with the glasses, that's Officer McLeod, right?

****

A:     Yes.

(Alexander Dep., 55:17-56:8, PgID 173-74, ECF #17-2.)

Even viewing the facts in the light most favorable to the non-moving party, the Court finds that Officer McLeod's search of the vehicle was lawful. Pursuant to the "collective knowledge" doctrine, Officer McLeod was entitled to rely on information provided to him by his fellow officer when determining to perform a consent search of the car. *United States v. Hensley*, 469 U.S. 221, 232 (1985) (officers who arrest an individual in reliance on a flyer or bulletin issued by the police "may have a good-faith defense to any civil suit" if that flyer or bulletin contains false information); *Whiteley v. Warden*, 401 U.S. 560, 568 (1971) (noting

that police officers "are entitled to assume" that "officers requesting aid" to execute a warrant "offered the magistrate the information requisite to support an independent judicial assessment of probable cause"); *United States v. Lyons*, 687 F.3d 754, 769 (6th Cir. 2012) ("Responding officers are entitled to presume the accuracy of the information furnished to them by other law enforcement personnel."); *Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 864 (6th Cir. 2012) ("When social workers rely in good faith on information from police officers which suggests they can enter a home under an exception to the warrant requirement, or can reasonably infer that an exception applies from their actions, they are entitled to rely on that information."); *Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir. 2003) ("[Plaintiff] cannot prevail in a § 1983 suit" when defendants acted on inaccurate information from police dispatcher prior to making a *Terry* stop).

Officer McLeod reasonably believed that consent had been obtained, and therefore, he did not commit a violation of the Fourth Amendment even if Officer Viviano had not in fact obtained verbal consent. Accordingly, Officer McLeod is entitled to summary judgment on Count III.

## D.    Qualified Immunity

Even if a violation had occurred (which it had not), Officer McLeod is entitled to qualified immunity against the claim of an unlawful search because Plaintiff has

not met his burden of establishing that Officer McLeod unreasonably violated a clearly established right.

Courts undertake a two-prong analysis for addressing qualified immunity issues. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz,* 533 U.S. 194, 200–01 (2001). The first prong is whether the plaintiff has alleged and supported with evidence facts showing that the defendant's conduct violated a constitutional or statutory right. *Saucier* at 201. The second prong of the qualified immunity inquiry is whether the right was "clearly established at the time of the defendant's alleged misconduct." *Id*. "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

This "clearly established" standard protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably...anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Plaintiffs bringing suit under Section 1983 must show that "in the light of pre-existing law," a reasonable officer would have understood that the actions for which he now faces suit were unlawful. *Champion* at 902 (quoting *Higgason v. Stephens*, 288 F.3d 868,

876 (6th Cir. 2002)). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier* at 202. When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Haynes v. City of Circleville,* 474 F.3d 357, 362 (6th Cir. 2007).

Here, Plaintiff has not directed the Court to a case where an officer relied on another officer's claim of consent and was held liable for a search, and the Court has found no such authority.[4] A warrantless search may be reasonable if the person searched provides valid consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973). Officer McLeod reasonably believed that Plaintiff had consented to the search based on the information conveyed to him from Officer Viviano. The

---

[4] Plaintiff raised novel arguments concerning the video during the hearing on the Motion. The Court declines to consider these perfunctorily raised theories. *Roberts v. Principi,* 283 F. App'x 325, 332 n. 3 (6th Cir. 2008) ("Because counsel raised the issue only at oral argument, however, we decline to review it."); *Lane v. LaFollette, Tenn.,* 490 F.3d 410, 420 (6th Cir. 2007) (issue waived by first raising it at oral argument); *Lafata v. Dearborn Heights Sch. Dist. No. 7,* No. 13-CV-10755, 2013 WL 6500068, at *8 (E.D. Mich. Dec. 11, 2013) ("Generally, courts will not consider theories or arguments raised for the first time at oral argument."); *Probst v. Cent. Ohio Youth Ctr.,* 511 F. Supp. 2d 862, 871 (S.D. Ohio 2007) ("It is well established that a moving party may not raise an issue for the first time in its reply brief or at oral argument."); *Van Sickle v. Automatic Data Processing, Inc.,* 952 F. Supp. 1213, 1221 (E.D. Mich. 1997) (holding summary judgment inappropriate on an issue raised for the first time at a hearing, because the opposing party did not have an opportunity to respond).

"collective knowledge" doctrine forecloses the argument that Officer McLeod could not reasonably rely that information. Absent any cases even suggesting that an officer cannot rely on another officer's report of consent, Plaintiff cannot show that Officer McLeod violated a clearly established right, and Officer McLeod is entitled to qualified immunity as to Count III.

## VI.    CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment.

IT IS SO ORDERED.


Dated:  January 29, 2019                          s/Paul D. Borman
                                                  Paul D. Borman
                                                  United States District Judge